# Re Blank, an Attorney.

The act of an attorney in wilfully and wrongfully abstracting from the files in the prothonotary's office a receipt attached to a fi. fa. is such professional misconduct as warrants suspending him from practice for a limited time, even though there be no proof of criminal intent.

(Decided January 18, 1886.)

Error to the Court of Common Pleas of Luzerne County to review a judgment suspending an attorney from practising before the courts. Affirmed.

The facts of the case are well stated in the opinion of the court below, which was as follows:

Opinion by WOODWARD, J.:

Upon the filing of a petition signed by John T. Lenahan, Henry A. Fuller, and J. Vaughan Darling, Esquires, as a committee of the Wilkes Barre Law & Library Association, together with a copy of certain specifications and charges, this court on July 27, 1885, granted a rule on Blank, Esq., a member of the bar, to show cause why he shall not be disbarred or suspended from the practice of the law.

The charges are: 1st, mutilation and abstraction of a record in the office of the prothonotary of the county, by detaching from an execution and withdrawing from the files a certain receipt, satisfying a judgment in favor of his client; and 2d,

Cited in *Re* Shoemaker, 2 Pa. Super. Ct. 27, 38.

NOTE.—In Smith's Appeal, 179 Pa. 14, 36 Atl. 134, the power of the court of common pleas to disbar an attorney without calling a jury to pass upon his misconduct was affirmed. In this case he had, by oral statements, written communications and papers filed of record, reflected on the integrity of the judges presiding. The case of Maires's Disbarment, reported in 189 Pa. 99, 41 Atl. 988, was one in which the attorney employed runners to hunt up cases and secure employment, induced suitors to sign agreements giving an interest in their claims, fraudulently filled up blanks, and made false statements of amounts received by him. The hearing was had before the judges of the court in which he practised. An attorney may be disbarred for retaining money of a client. Heindell's Case, 15 York Legal Record, 77. But he cannot be disbarred for monies embezzled, but not received in a professional capacity, until trial and conviction. A's Disbarment, 11 Pa. Dist. R. 268.

Necessity of bad or fraudulent motive to justify disbarment, see editorial note to State *ex rel.* Fowler v. Finley, 18 L. R. A. 401.

embracery, by unlawfully attempting to bias the mind of a juror impaneled in a certain civil action in said county, wherein he, the said Blank, appeared for one of the parties.

It is to be observed at the outset that these charges are criminal in their character. In regard to the first, it is provided by § 15 of the act of assembly of March 31, 1860 (Purdon's Digest, 405, pl. 21): "If any prothonotary, clerk, register, public officer, or other person shall fraudulently make a false entry in, or erase, alter, secrete, carry away, or destroy any public record or any part thereof, of any court or public office of this commonwealth, such person shall be guilty of a misdemeanor and, on conviction, shall be sentenced to pay a fine not exceeding $1,000, and to undergo an imprisonment by separate or solitary confinement at labor not exceeding two years."

The respondent, by his counsel, asks us to hold that, as the charges against him are criminal in their character and such as are forbidden by statute, under a penalty, the court can have no jurisdiction to entertain proceedings against him as an attorney and officer of the court, until after his indictment and trial in the quarter sessions, for the offenses specified. The question thus presented must be first considered.

In England it was ordained by statute 4 Henry IV., chap. 18, "that all attorneys should be examined by the justices, and by their discretions their names should be put in a roll." They were to be good and virtuous and of good fame; and if they appeared to be such they were to be received and sworn well and truly to serve in their offices. 2 Reeves, History of English Law, 499.

The general assembly of Pennsylvania for the years 1721, 1722, passed an act entitled "An Act for Establishing Courts of Judicature in This Province." Section 28 of this act provides "that there may be a competent number of persons, of an honest disposition and learned in the law, admitted by the justices of the said respective courts to practice as attorneys there, who shall behave themselves justly and faithfully in their practice. And if they misbehave themselves therein, they shall suffer such penalties and suspensions as attorneys at law in Great Britain are liable to in such cases." 1 Smith's Laws, 131. The mode adopted in England for the punishment of attorneys for misconduct is by attachment and, in very gross cases, by striking them off the roll. See Archbold, Pr. 26.

By the act of April 14, 1834, entitled "An Act Relative to the Organization of the Court of Justice," P. L. 354, it is enacted that "the judges of the several courts of record of this commonwealth shall, respectively, have power to admit a competent number of persons of an honest disposition and learned in the law to practice as attorneys in their respective courts." Sections 68, 73 of this act provides: "If any attorney at law shall misbehave himself in his office of attorney, he shall be liable to suspension, removal from office, or to such other penalties as have hitherto been allowed in such cases by the laws of this commonwealth."

In the case of Austin, decided by our supreme court in 1836, and reported in 5 Rawle, 203, 28 Am. Dec. 657, it was said by Chief Justice GIBSON: "An attorney at law is an officer of the court. . . . Individuals of the class may, and sometimes do, forfeit their professional franchise by abusing it, and a power to exact the forfeiture must be lodged somewhere. Such a power is indispensable to protect the court, the administration of justice, and themselves."

In Dickens's Case, 67 Pa. 177, 5 Am. Rep. 420, it was shown that a member of the bar had undertaken to make his opponent drunk, in order to take advantage of him upon the trial of a cause in court. The supreme court says: "This was a wicked act, as well as one which struck directly at the due administration of justice. In its effect and criminal purpose it differs none from tampering with a juror, corrupting a witness, or bribing a judge. . . . The man who can do this thing is unfit to practice in a court where justice is administered, and should be expelled from its bar; or, at least, should be suspended from the practice until he has shown by sincere amendment that his offense is thoroughly purged."

In the Philadelphia case of Re Hirst, 9 Phila. 216, two rules were granted: One that respondents should answer for a contempt of court, the other to show cause why they should not be disbarred. The first rule was discharged, and an order made that a certified copy of the evidence be transmitted to the district attorney. In disposing of the second rule, the court says: "Where an attorney undertakes to obtain bail for his client, he will be held responsible for any fraud or deception on the court in obtaining and justifying the bail. . . . In view of all the circumstances, we are unable to acquit him [Ingersoll] of

malpractice, and, therefore, make the rule to strike his name from the list absolute." Judge HARE, in his opinion, said further: "The office of an attorney is a privilege which is obtained through an order of the court, founded on evidence that he possesses the requisite learning, and is of good moral character. And, as he obtains admission through the court, so it is the right and duty of the court to remove him if it appears from his subsequent conduct that their confidence was ill placed."

In *Re* Davies, 93 Pa. 116, 39 Am. Rep. 726, the attorney was professionally employed by his client to procure for her a bond of $100 from the trust company. He obtained it, but, instead of delivering it to her, he pledged it to one Humphreys, as security for money borrowed of the latter. The bond was frequently demanded, but without success. Having disregarded all his promises, the client made an affidavit before a magistrate, and he was arrested for embezzlement, and gave bail for his appearance at court. After this, and after application to the board of censors of the law association, a settlement was made between the counsel and his client, she consenting to the entry of a *nolle prosequi,* and a release of all claims. It was contended that this settlement operated as an absolution and remission of the offense. The supreme court, however, sustained the court below in striking the attorney off the roll,. and in speaking of the argument says: "This view of the case ignores the fact that the exercise of the power is not for the purpose of enforcing civil remedies between parties, but to protect the court and the public against an attorney guilty of unworthy practices in his profession."

In the case of *Ex parte* Steinman, 95 Pa. 220, 40 Am. Rep. 637, the respondents were disbarred in the court below for misbehavior in their office as attorneys. This judgment was reversed by the supreme court, because, as editors of a newspaper, they were held protected by the Declaration of Rights of the Constitution of 1874, § 7, which provides that "no conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury." The supreme court find in the statement of the judge in

the court below, conclusive proof that the publication was not made maliciously nor negligently.

In the course of his opinion SHARSWOOD, Ch. J., says: "No question can be made of the power of a court to strike a member of the bar from the roll for official misconduct in or out of court." His remarks in reference to the necessity of an indictment, trial, and conviction of crime, as a condition precedent to summary proceedings for disbarment, are to be understood as applicable to crimes committed by the lawyer as an individual, and having no connection with his professional relations as an officer of the court.

The statutes and the adjudicated cases to which we have now called attention seem to establish the truth of the proposition that an attorney at law is an officer of the court; and that, for offenses amounting to misconduct or misbehavior in office, he may, in the discretion of the court, be either suspended from practice, or be disbarred and stricken from the rolls. And if this be true, then it would seem clear that, where the misconduct amounts to a crime but has been perpetrated in the professional relation and in violation of the professional oath which requires "all good fidelity as well to the court as to the client," the courts are not bound to await the result of an indictment and trial by jury. And this view of the case is entirely consistent and reconcilable with the other proposition, that, where the criminal offense is entirely extra-professional, and was not committed by a lawyer acting as such, or because of any relation existing between counsel and client, there should be no prejudgment of the case by summary proceedings.

The specification under the first charge in the case before us seems to be fully sustained by the evidence contained in the depositions of the witnesses, and by the record itself. It may be thus stated: In the month of November, 1880, a *testatum* writ of fieri facias to the sheriff of Lackawanna county was issued upon a judgment in Luzerne county, against one E. E. Hendrick, in favor of one E. E. Thomas, who was the client of the defendant. While this writ was in the hands of the sheriff, the parties effected a settlement, and Thomas gave to Hendrick a receipt in full satisfaction of the writ. This paper the sheriff attached to the writ, as part of his return, and it was then returned to the office of the prothonotary of Luzerne county. While the writ remained in the office, but before the receipt and

satisfaction had been entered on the proper docket, the defendant, without any permission or right so to do, detached the receipt from the writ, thus withdrawing it from the files, and retained it for a considerable time in his possession, during which time he caused an alias writ to be issued. An affidavit of these facts subsequently resulted in a rule to open the judgment, and an issue to try the question of the satisfaction of the judgment.

The respondent does not deny the material allegations thus specified, but seeks to explain and, to some extent, justify, his conduct. He alleges that the receipt was given by his client under a misapprehension; that it did not fully express and set forth the character of the settlement made between the parties; and that he feared the paper might be removed or tampered with by the adversary party, so as to injure his client's interest. For these reasons he took possession of the paper and retained it in his keeping, but, as he alleges, made no secret of the fact and was always ready to produce it and did produce it in court, when wanted on the hearing of the rule to open judgment, and at the trial of the issue.

We have already called attention to our statute in reference to the alteration, carrying away, or destroying of public records. The severity of the penalty imposed indicates properly the estimate which experience has sanctioned of the offense itself. Mutilations or destruction of public records constitute a crime against the peace and good order of society. And the reason of this is obvious. The records of our courts contain the best, and often the only, proofs of all legal proceedings and administration of the laws. In the language of Sir Edward Coke, they "import in themselves such uncontrollable credit and verity, as they admit of no averment, plea, or proof to the contrary." Hence, the records of our courts of justice are regarded as judicial memorials, which are to be sacredly guarded by the officers chosen for that purpose, as well as by all others whose official relations to the courts give them a restricted access to legal documents for purposes of examination. The Sibylline Books of ancient Rome were not more intimately connected with the political and religious history of the Roman people than are our court records with all that pertains to our right of person and property, as citizens of a free state. The jealous, although superstitious, care with which the Romans watched over those mysterious volumes may well be emulated by us, in protecting

the records of our courts from reckless vandalism or wilful and crafty spoliation.

In addition to the explanations of his conduct given by the respondent himself and contained in the testimony, it was suggested by his counsel in argument that his action in detaching and removing the receipt was the result of a zeal in behalf of his client which, in its worst aspect, was merely a mistake. We are pointed also to the fact that, as no personal or sordid interest was to be subserved, his motive could not have been corrupt. And while such considerations have force, and are not to be disregarded in the final disposition of the case, it must not be forgotten that we are dealing with a question of unprofessional conduct, wherein motive is not the vital point. A member of the bar, as an officer of the court, owes a duty to the court, to the profession, and to himself, which no client or case can justify him in forgetting. The fidelity due the client is fully vindicated when he has served him with his best learning and ability, in channels which are clear and pure. His obligations to the high and honorable profession of which he is a member forbid any resort to chicanery and artifice, which must succeed, if at all, as do the tricks of the juggler, by blinding the sight and cheating the judgment.

It only remains for us to say that, in our judgment, the respondent is guilty, under the evidence, of the first charge preferred against him, in the complaint filed in this case.

In conclusion we say that, after a careful consideration of the evidence in this case, we are of the opinion that the respondent is not guilty of the second charge contained in the complaint. The finding and judgment of the court therefore is, that the respondent is guilty of the first charge and not guilty of the second charge. And the sentence of the court is that the respondent be suspended from practice as a member of the bar for the period of six months.

The respondent thereupon brought error.

*E. S. Osborne, John Lynch,* and *F. Carroll Brewster,* for plaintiff in error.—The decree of the court below suspending plaintiff in error is erroneous for the following reasons:

1. The receipt detached from the execution by plaintiff in error was not a record or part of a record.

2. The evidence clearly shows the paper was not fraudulently detached or secreted.

3. Plaintiff in error had once suffered the legal penalty of a reprimand, administered by the court, upon this identical charge. He should not, therefore, be again punished by the same court on that accusation.

4. It was four and a half years from the commission of the alleged offense until the petition in this case was filed; therefore, this prosecution is barred by lapse of time.

A record is a "written memorial made by a public officer authorized by law to perform that function and intended to serve as evidence of something written, said, or done." Bouvier, Law Dict.; Bouvier, Inst. Pl. 3096. The official minutes of the pleadings and other proceedings. Stephen, Pl. 25, Appendix to 9th Am. ed. 18.

The record of an action in a court founded on the common law consists of the writ, declaration, pleas, and judgment. Erb v. Scott, 14 Pa. 20.

A return is a short account in writing, made by the sheriff or other ministerial officer, of the manner in which he has executed a writ. Bouvier, Law Dict.; Bouvier, Inst. Pl. 2794.

A sheriff's return has always been strictly construed, and nothing contained in it is considered a part of the return or evidence, except such as is necessary to show his manner of executing the writ. For example, an indorsement on the writ by the deputy sheriff of the date of an arrest is not part of the record. Dolan v. Briggs, 4 Binn. 496.

Proceedings to disbar an attorney are in the nature of a criminal prosecution. Re Baluss, 28 Mich. 507; Re An Attorney, 1 Hun, 321; Thomas v. State, 58 Ala. 365.

Where an attorney is charged with acts of malpractice, the case should be free from doubt, not only as to the acts charged but also as to his motive, before he should be punished. People ex rel. Miller v. Harvey, 41 Ill. 277.

The action of an attorney may be deserving of rebuke, and yet not be evidence of criminal design. State ex rel. Guille v. Chapman, 11 Ohio, 430.

Where a court has jurisdiction, a conviction is a bar, although the proceedings before the court are so defective that they may be reversed for error. Stevens v. Fassett, 27 Me. 266; Com. v.

Loud, 3 Met. 328, 37 Am. Dec. 139; State v. Thornton, 37 Mo. 360; Com. v. Miller, 5 Dana, 320.

The statute of limitations in criminal suits—and this is virtually one—is not one of process to be scantily or grudgingly applied, but an amnesty declaring that, after a certain time, oblivion shall be cast over the offense; that the offender shall be at liberty to return to his occupation, and that, from henceforth, he may cease to preserve the proofs of his innocence, for the proofs of his offense are erased. Hence it is that the statutes of limitation are to be liberally construed in favor of a defendant. The law does not favor informations against attorneys at law, after the lapse of a great length of time from the commission of the acts complained of. In analogy to the limitation of prosecutions for misdemeanors there ought to be a limit to the time of filing such information. People v. Allison, 68 Ill. 151.

*J. Vaughan Darling, J. T. Lenahan,* and *Henry A. Fuller* for defendants in error.

PER CURIAM:

Public policy demands that the court and the public be protected against unworthy practices of an attorney in his profession. The learned judge, after a full hearing, and on evidence the most of which was undisputed, found the plaintiff in error guilty of abstracting from the files in the office of the prothonotary a receipt attached to a fieri facias. While there may have been doubt as to any criminal intent, yet it was clearly an act of such professional misconduct as to justify the judgment of the court in suspending him from practice for the limited time specified. The reasons stated in the opinion of the court sustain its conclusion.

Judgment affirmed.